UNITED STATES of America, Appellee,

v.

William Albert LOWRY, Appellant.

No. 81–5208.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1982.

Decided April 2, 1982.

Rehearing and Rehearing En Banc Denied May 20, 1982.

Thomas C. Manning, Raleigh, N. C. (Barbara A. Smith, Cheshire & Manning, Raleigh, N. C., on brief), for appellant.

William C. Bryson, Dept. of Justice, Washington, D. C. (Samuel T. Currin, U. S. Atty., Raleigh, N. C., on brief), for appellee.

Before MURNAGHAN and SPROUSE, Circuit Judges, and MICHAEL,* District Judge.

SPROUSE, Circuit Judge:

William L. Lowry appeals his conviction, after a jury trial, of importing marijuana in violation of 21 U.S.C. §§ 952(a) and 960(a)(1), and of using the United States mails to facilitate the importation in violation of 21 U.S.C. § 843(b).

In January 1979, customs agents in Miami, Florida, alerted by a narcotics-detecting dog, intercepted and opened a package which contained a wooden carving, which in turn was filled with hashish oil. The package was addressed to "Bob Murray" at general delivery in Atlantic Beach, North Carolina, and had been mailed from Jamaica. The customs agents rewrapped the package and sent it to a postal inspector in New Bern, North Carolina, who delivered the package to the Atlantic Beach post office.[1] Narcotics agents were posted there waiting for someone to claim the package. The agents had been advised that "William Lowry had called for the package on several occasions during the previous week," and after waiting one day, an agent telephoned Lowry's residence under the guise of being a post office representative. Lowry was not there, but the agent talked to Patricia Webb, who lived in the same apartment. He told her that the package about which Lowry had inquired had arrived. Ms. Webb advised the agent that she would be in the

---

* Honorable James H. Michael, Jr., District Judge for the Western District of Virginia, sitting by designation.

1. The package was transported from Miami to New Bern utilizing a "controlled delivery" system, whereby the package is removed from normal mail channels and specially transported by registered mail in a locked container. During this procedure, officials of the Postal Service, the Drug Enforcement Administration and the Customs Service each play a part in the shipment process.

area of the post office and would pick up the package.[2]

After Ms. Webb received the package, the agents obtained a state search warrant for the Webb/Lowry residence. The search warrant directed the law enforcement officers to search for the package and "related correspondence." Approximately thirty minutes after Webb arrived back at the apartment, a number of law enforcement officers from various agencies entered the house on the authority of the search warrant, seized the package which was lying on the counter between the kitchen and the living room, and thoroughly searched each of the other rooms. In addition to the package, the agents seized travel papers indicating Lowry's travel by air from Miami to Jamaica the previous month, a postal receipt relating to the package, and other items. At trial the government presented the seized documentary evidence and expert testimony that the seized package was addressed in Lowry's handwriting and that the package and the letter inside of it contained his fingerprints.

Lowry contends that the search warrant was overly broad in its description of the objects of the search and that the government had established no probable cause for its issuance. He also contends that there was no venue to try him in the Eastern District of North Carolina, wherein Atlantic Beach is located. Finding no merit to any of these contentions, we affirm.

■ The affidavit of a state narcotics officer stated that the package had been delivered to Lowry's apartment that afternoon, that Lowry had picked up similar packages in the past, and that he lived at the described location. We agree with the trial court that this affidavit was sufficient to establish probable cause to believe that the package would be found in Lowry's apartment.

■ The trial court also found that the agents had probable cause to believe they could find "related correspondence" in the apartment because the appellant had told postal authorities that he had a receipt for the package, and that the term "related correspondence" was sufficiently definite so as to not violate the fourth amendment's specificity requirement. The character of the items to be seized pursuant to a warrant controls to a large extent the degree of specificity required in describing them, and this court has noted that the constitutionally-mandated requirement of particularity carries with it a "practical margin of flexibility," *United States v. Jacob*, 657 F.2d 49, 52 (4th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1435, 70 L.Ed.2d 653 (1982); *United States v. Espinoza*, 641 F.2d 153, 165 (4th Cir. 1981); *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). In *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the Supreme Court of the United States upheld the validity of a warrant naming specific documents and "other fruits, instrumentalities and evidence of crime . . . ." The lower court in *Andresen* construed that warrant to allow only the seizure of evidence relating to the offense that was the subject of the warrant. The term "related correspondence" as used in the challenged warrant was construed by the district court to allow only the seizure of documents connected to the package which was the target of the search and thus read, is at least as specific as the formulation approved by the Supreme Court in *Andresen*. Given the "margin of flexibility" inherent in the fourth amendment's specificity requirement, we find no error in the trial court's admission into evidence of the seized documents.

Lowry further argues that even if the warrant was facially valid, the government did not properly establish probable cause, but rather manufactured or contrived it by having the package placed in his residence and then seeking a warrant to search for it. Although the narcotics agents might have

---

2. There was a conflict in evidence concerning this conversation—Ms. Webb testified that the agents stated there had been a fire at the post office and asked her to pick up the package to prevent any further damage to it during the cleanup.

been better advised to have exercised more patience in the conduct of their surveillance, we do not believe their actions vitiated the legality of the search warrant. The trial court at the suppression hearing found that Lowry had called for the package on several occasions, that he had indicated to the postmaster that he had a receipt for the package, that he had picked up similar packages approximately once a month for the past nine months, that he lived with the Webbs at the named residence, and that Ms. Webb was seen returning to the residence after she had picked up the package. This was sufficient to establish probable cause to believe that the package in question was at the Webb/Lowry residence, and the warrant was therefore properly issued by the magistrate.

Lastly, Lowry contends that the Eastern District of North Carolina was an improper venue in which to try him for importation of a controlled substance and use of the mails to facilitate such importation. We disagree. The importation of controlled substances proscribed by 21 U.S.C. § 952(a) "is a 'continuous crime' that is not complete until the controlled substance reaches its final destination . . . and venue is proper in any district along the way." *United States v. Gray*, 626 F.2d 494 (5th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 345 (1981). The offense of using the mails to facilitate the importation of controlled substances may be prosecuted "in any district from, through or into which [the] mail matter moves..." 18 U.S.C. § 3237(a). We do not believe that the use of the "controlled delivery" process to transport the package via registered mail to its original, intended destination served to destroy the venue otherwise proper.

The judgment of the district court is, therefore, affirmed.

AFFIRMED.