895 F.2d 1415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James R. RUMLER, Defendant-Appellant.
 No. 89-1341.
 United States Court of Appeals, Sixth Circuit.
 Feb. 8, 1990.
 
 Before MERRITT, Chief Judge, and KENNEDY and BOGGS, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 In this direct criminal appeal, defendant James Rumler challenges his jury conviction for conspiracy to import marijuana, in violation of 21 U.S.C. Secs. 952 and 960, for which he is serving a seven-year sentence. Rumler raises three issues on appeal: 1) whether there was sufficient evidence to support his conviction; 2) whether venue was proper within the Eastern District of Michigan; and 3) whether the government improperly failed to disclose a witness's delayed sentence in an unrelated state court case. We find defendant's claims to be without merit and therefore uphold his conviction.
 
 I.
 
 2
 The indictment charged that the conspiracy occurred between July and September of 1986 in the Eastern District of Michigan and other locations inside and outside the United States. Early in 1986, Rumler got together with a licensed pilot named Robert Whiting, who had just been arrested in Georgia on state charges of cocaine possession. Rumler asked Whiting whether he would fly planeloads of marijuana out of Jamaica. J.A. at 85-87. After extensive discussions, the two men went to Chattanooga, Tennessee, where Rumler bought an airplane for $59,000 cash. They agreed to fly to Jamaica and load the plane with bales of marijuana, which they would drop out of the plane to waiting speedboats in the Bahama Islands. Whiting was to receive from co-conspirator-ringleader Jesse Harget $300,000 for ten of these expeditions. J.A. 99-101.
 
 
 3
 The first trip, for which Whiting got a $5,000 advance, failed. He and Rumler flew in July to a remote airstrip in Jamaica to pick up a load of marijuana, but Jamaican officials impounded the plane because Whiting and Rumler could not prove ownership. They tried again in August, this time successfully obtaining several large bales (1,800 pounds) of marijuana wrapped in plastic. While flying over Andros Island (off Cuba's northern coast) en route to the states, Rumler threw the bales out of the plane to be picked up by waiting speedboats. Rumler and Whiting made a third trip in late August, this time flying from Florida to Bimini and then on to Jamaica, where again they filled the plane with bales of marijuana (2,000 pounds), which they dropped off into the sea somewhere in the Beery Islands (southeast of Florida). Harget refused to pay Whiting for this trip, claiming that the load was ripped off. In September, Rumler met with Whiting several times in a Michigan tavern to discuss further trips to Jamaica, but Whiting declined when he learned that Harget would not pay him in advance. J.A. 130.
 
 
 4
 At trial the government produced three witnesses. First, Robin Shuberg testified that she and Rumler stayed as guests at Harget's house in Ft. Lauderdale, Florida, where she saw Rumler and Harget armed with guns with the latter wearing a bullet-proof vest. Harget mentioned that he had just been ripped off for $1,000,000 when a boat from Jamaica failed to make a scheduled delivery of marijuana. Second, Gerald Jones testified to having flown a 740-pound load of marijuana from Florida to Michigan in 1984 in exchange for $3,000 cash and some drugs from Harget. Whiting, the government's third witness, provided the testimony most damaging to Rumler. He described to the jury how Rumler sought him out, how they purchased an airplane, and how they flew to Jamaica three times to pick up marijuana for transport as described above.
 
 II.
 
 5
 Rumler's first claim, based on the familiar standard under Jackson v. Virginia, 443 U.S. 307, 319 (1979), challenged the jury's finding that he was a member of a criminal conspiracy to distribute marijuana in the United States. Rumler contends that he and Whiting agreed only to smuggle marijuana out of Jamaica, but never agreed to smuggle it into the United States.
 
 
 6
 We believe there is sufficient evidence to prove Rumler and Whiting's ties to each other and to Harget, as well as the existence of an agreement to distribute marijuana in the United States. The three met several times in various locations to discuss the smuggling operation. Harget offered Whiting (in the company of Rumler) $300,000 to make ten trips. Rumler, in turn, paid for incidental expenses that Whiting incurred in preparation for their ventures to Jamaica. Further, Robin Shuberg testified about her eight-day stay at Harget's Ft. Lauderdale home, highlighted by secret meetings, "gun toting," and boasting about how they had been ripped off for $1,000,000.
 
 
 7
 Taken in the light most favorable to the government, a rational jury could have found the four essential elements of a conspiracy in which Rumler played a part: 1) an agreement; 2) two or more persons; 3) an unlawful purpose; and 4) an overt act in furtherance of the conspiracy. Harget, Whiting, and Rumler had agreed to smuggle marijuana out of Jamaica. Rumler and Whiting's two successful trips to Jamaica constitute overt acts in furtherance of this illegal agreement. The only remaining question under Jackson v. Virginia is whether the jury had sufficient evidence to conclude that the agreement was to import the marijuana into the United States. Cf. United States v. Conroy, 589 F.2d 1258, 1269-71 (5th Cir.), cert. denied, 444 U.S. 831 (1979). We conclude that it did.
 
 
 8
 In addition to Jones's testimony that to avoid Customs inspections, "[t]he boats would pick it up and bring it on in," J.A. at 66, Whiting testified about the conspirators' planning activities, including the need for a plane suitable for transporting marijuana from Jamaica to Florida. J.A. at 95-97. Whiting further testified that each of the three flights originated and concluded in south Florida. This evidence, coupled with Ms. Shuberg's description of Rumler and Harget's efforts to recover $1,000,000 of stolen marijuana, permitted the jury to infer that Rumler conspired to import marijuana into the United States.
 
 III.
 
 9
 Rumler argues next that venue was not proper in the Eastern District of Michigan.[1] Smuggling has been characterized as a continuous crime that is not complete until the drugs reach their final destination; venue is proper in any district along the way. United States v. Lowry, 675 F.2d 593, 596 (4th Cir.1982). In a conspiracy case, venue as to all members lies in any district in which any act in furtherance of the conspiracy was committed by any one of the conspirators. See United States v. Overshon, 494 F.2d 894, 899-900 (8th Cir.), cert. denied, 419 U.S. 853 (1974). The indictment charged that a meeting at a Michigan tavern where Rumler and Whiting discussed future trips to Jamaica was in furtherance of the conspiracy. Other overt acts, most involving discussions of the smuggling operation, also occurred in the Eastern District of Michigan. With these events in mind, we hold that a preponderance of the evidence, both direct and circumstantial, defeats Rumler's claim that venue was improper.
 
 IV.
 
 10
 Rumler's third and final claim also is without merit.[2] As the record shows, Whiting's testimony was crucial to the jury's conviction of Rumler. That the government gave Whiting use immunity in exchange for his testimony is undisputed. Rumler's claim focuses on Whiting's guilty plea and deferred sentencing agreement in an unrelated state charge for possession of cocaine. In an incorrect reading of the Jencks Act, 18 U.S.C. Sec. 3500 (1988),[3] Rumler contends that the terms of Whiting's plea and sentence agreement in the unrelated Georgia case were not fully disclosed. The Jencks Act, however, only requires the government to disclose witness statements, not the content of plea and sentence agreements.
 
 
 11
 In addition to Rumler's misreading of the Jencks Act, he overlooks that both the government and defense counsel examined Whiting at trial about his state conviction and sentence. See J.A. at 131-33, 171-76. Whiting testified that his only agreement with the government in this case was a grant of use immunity. Nothing prevented defense counsel from asking more questions of Whiting or from obtaining the court record of plea and conviction.
 
 
 12
 Finally, Rumler refers to a written question that the jury submitted to the court during deliberations. The jury wanted to know whether Whiting's delayed sentence in Georgia would be affected by his participation in the smuggling conspiracy. Because the state court trial record was silent on the issue, the district judge, without objection from either side, told the jury he did not know what the result would be in the Georgia case. Defense counsel presents no evidence in the record before us that the government withheld pertinent information, nor that any information unavailable to the defense prejudiced Rumler's case in any way.
 
 
 13
 For the foregoing reasons, defendant's conviction below is affirmed.
 
 
 
 [1]
 The pertinent statute states:
 Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
 Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.
 18 U.S.C. Sec. 3237(a) (1988).
 
 
 [2]
 Although during the pendency of this appeal Rumler's trial counsel was indicted on charges based on conduct related to this litigation, Rumler's substitute appellate counsel has not raised, and thus we do not consider, whether trial counsel's performance deprived Rumler of his Sixth Amendment guarantee to effective assistance of counsel
 
 
 [3]
 The Jencks Act requires the government in criminal prosecutions to produce witness statements in its possession which relate to the subject matter to which government witnesses have testified on direct examination. 18 U.S.C. Sec. 3500 (1988). See also United States v. Short, 671 F.2d 178, 186 (6th Cir.) (purpose of Jencks Act to give defendants access at trial to statements of government's trial witnesses), cert. denied, 457 U.S. 1119 (1982)