**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 95-5607

RENEE WITHERS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                              No. 95-5652

RENEE WITHERS,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-95-91-A)

Argued: September 27, 1996

Decided: November 19, 1996

Before WILKINSON, Chief Judge, and RUSSELL and HALL,
Circuit Judges.

_____


Affirmed in part and vacated and remanded in part by published opin-
ion. Chief Judge Wilkinson wrote the opinion, in which Judge Russell
and Judge Hall joined.

_____

**COUNSEL**

**ARGUED:** Peter Paul Vangellow, Falls Church, Virginia, for Appellant. John Patrick Rowley, III, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Vincent L. Gambale, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

Renee Withers was sentenced to 40 months imprisonment for importing and conspiring to import heroin in violation of 21 U.S.C. §§ 952 and 963. She argues on appeal that there was insufficient evidence to sustain her conviction, that the district court improperly gave the jury a deliberate ignorance instruction, and that she was prejudiced by the prosecution's inadvertent reference to a co-conspirator's plea agreement. We find none of these arguments persuasive.

The government, meanwhile, appeals the district court's significant downward departure from the Guidelines sentencing range of 121-151 months. The government argues that the district court erred in granting Withers a four-level adjustment for "minimal participation" and a seven-level departure for "diminished mental capacity." Furthermore, the government contends that the district court improperly applied the "safety valve" provision, 18 U.S.C. § 3553(f), to avoid the ten-year mandatory minimum sentence set forth in 21 U.S.C. § 960 for importing more than one kilogram of heroin. We agree that the district court erred both in disregarding the recommended Guidelines range and the statutory minimum. We therefore affirm Withers' conviction but vacate and remand this case for resentencing in light of the applicable law.

I.

In 1990, Renee Withers was recruited by a friend, Reece Whiting, to serve as a courier in a conspiracy to import heroin into the United

2

States from Thailand. Withers' role was to travel to Japan, then fly to San Francisco, where she would walk luggage containing heroin through customs. She next would leave the luggage at a hotel where it was to be picked up by one of Whiting's associates, Philip Phillips. The evidence showed that Withers made two trips to Japan -- one in October 1990 and another in August 1991. In November 1991, another of Whiting's couriers, Bonita Freeman, was arrested in San Francisco. Freeman's cooperation with law enforcement authorities led to the eventual demise of the conspiracy and the arrest of Withers. At trial, the jury convicted Withers of conspiracy and of the October 1990 importation, but acquitted her of the August 1991 importation.

II.

Withers raises several challenges to her conviction. We shall address them in turn.

A.

First, Withers argues that the evidence adduced at trial was insufficient to sustain her convictions. She contends that the government produced no evidence to refute her assertions that she did not know she was transporting drugs into the United States and believed her trips to Japan were solely to assist Whiting in the establishment of a lingerie business.

There was more than sufficient evidence to sustain Withers' convictions. Although Whiting testified that he never told Withers she would be transporting heroin, the circumstances of her trip were too suspicious to support her claims of ignorance. For example, before Withers left for Japan, Whiting asked her for some of her clothing so he could put it in the luggage that she was to walk through customs. Whiting also had Phillips call Withers so that she would later be able to identify Phillips' voice when he called to give her instructions in Japan. In addition, Whiting asked Withers for a photograph so that Phillips could identify her in San Francisco. Most tellingly, Whiting offered Withers $15,000 plus $5,000 in expenses to make the trips. In this case, we are convinced that a "rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt." United States v. Johnson, 54 F.3d 1150, 1153 (4th Cir.

3

1995) (citation omitted). Withers' assertions of ignorance in the face of persuasive evidence of knowledge do not cast her conviction into question.

B.

Second, Withers argues that the district court erred in giving the jury a deliberate ignorance instruction. Withers asserts such an instruction was unjustified because she was never told of the contents of the luggage she walked through customs and because her ignorance of its contents was complete.

"The willful blindness instruction allows the jury to impute the element of knowledge to the defendant if the evidence indicates [a defendant] purposely closed his eyes to avoid what was taking place around him." United States v. Schnable, 939 F.2d 197, 203 (4th Cir. 1991). In this case, there was overwhelming evidence that no reasonable person would have believed that the trip to Japan was for anything other than an illicit purpose. Indeed, Withers' assertions of ignorance in the face of these condemning circumstances presents precisely the sort of scenario that the deliberate ignorance instruction was designed to address. See id. at 204. Furthermore, the district court was careful to limit the reach of the deliberate ignorance instruction, telling the jury that it should not infer that a defendant had knowledge "from proof of a mistake, negligence, carelessness, or belief in an inaccurate proposition." See United States v. Mancuso, 42 F.3d 836, 846 (4th Cir. 1994). We cannot hold that the district court abused its discretion when it gave this instruction. See United States v. Whittington, 26 F.3d 456, 462 (4th Cir. 1994).

C.

Lastly, Withers claims that she was prejudiced when the prosecution inadvertently mentioned the plea agreement of Bonita Freeman. During Freeman's testimony, Withers' counsel objected to the introduction of Freeman's plea agreement, and the prosecutor agreed to avoid the subject. Later in Freeman's examination, the prosecutor asked her whether she had entered a plea agreement in California. Withers' counsel objected and the judge directed the prosecutor to

4

move on. Withers' counsel acknowledges that the prosecutor's reference to the plea was inadvertent.

In United States v. Blevins, 960 F.2d 1252 (4th Cir. 1992), we addressed the issue of the prejudicial effect of the admission of non-testifying co-defendants' guilty pleas. We noted that such evidence "raises the concern that a defendant might be convicted upon the charges against the co-defendants, rather than upon an individual assessment of the remaining defendant's personal culpability." Id. at 1260 (citation omitted). Nevertheless, we expressed doubt that the mention of a guilty plea by a testifying co-defendant -- a situation more analogous to the case at hand -- would be error since the defendant would have the opportunity to cross-examine the witness. Id. at 1260 n.3.

Even if the mention of Freeman's plea agreement was error, however, it was plainly harmless. In the instant case, it was uncontroverted that Withers transported heroin into the United States from Japan. The conviction turned on whether the jury believed her assertion of ignorance of the contents of the luggage. We have noted the overwhelming evidence that would have led a jury to question the credibility of Withers' defense. We are convinced that the brief mention of Freeman's plea agreement did nothing to change the outcome of the trial. Freeman's testimony described the method she used for transporting drugs through customs. That method was identical to the one used by Withers and therefore corroborated the testimony of other witnesses who had described how Withers had accomplished transporting heroin into the United States. Freeman also testified that she was arrested as soon as she took the heroin through customs in San Francisco. Given Freeman's testimony on her methods of importation and her arrest, it is difficult to imagine that the mere mention of her plea agreement did anything further to prejudice Withers. Any error, therefore, does not warrant a reversal of her conviction. See Chapman v. California, 386 U.S. 18, 24 (1967).[1]

_____

[1] Withers also argues that there was insufficient evidence to support a finding of importation. This contention, however, rests on her assertion of ignorance as to the contents of the luggage she took through San Francisco. We find this claim meritless.

5

III.

We turn next to the sentencing issues. Having been convicted of transporting 8.4 kilograms of heroin into the United States in October 1990, Withers was subject to a ten-year minimum sentence for the importation of more than one kilogram of heroin. 21 U.S.C. § 960. Furthermore, the presentence report recommended a base Guideline level of 32 for the offense, which set a sentencing range of 121-151 months imprisonment. This was calculated from a level of 34 for the importation of between 3 and 10 kilograms of heroin, U.S.S.G. § 2D1.1(c)(3), minus a two-level "minor role" adjustment, U.S.S.G. § 3B1.2. The probation officer specifically rejected a "minimal role" adjustment, concluding that "the relatively large amount of heroin involved precludes . . . a four-level decrease for .. . `minimal' participa[tion]." The district court, however, reduced the base Guideline level to 21 by applying a four-level "minimal role" adjustment and a seven-level "diminished mental capacity" departure, and avoided the 120 month mandatory sentence of 21 U.S.C. § 960 by applying the safety valve provision of 18 U.S.C. § 3553(f). These reductions resulted in a sentencing range of 37-46 months, and the district court proceeded to sentence Withers to 40 months. The government appeals this sentence, arguing that the district court improperly applied the safety valve and that the district court's downward departure from the Guidelines range was impermissible.

A.

The safety valve provision set forth in 18 U.S.C.§ 3553(f) contemplates shorter sentences for first time offenders who might otherwise be subject to mandatory minimum sentences. To be eligible for treatment under section 3553(f), a defendant must meet five statutory requirements. The government concedes that Withers met all of the requirements of section 3553(f) except for number five. Under that requirement, the defendant must by the time of the sentencing hearing have "truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f)(5). We have recognized that "defendants seeking to avail themselves of downward departures under § 3553(f) bear the burden of affirmatively acting, no later than sentencing, to

6

ensure that the government is <u>truthfully provided with all information and evidence</u> the defendants have concerning the relevant crimes." <u>United States v. Ivester</u>, 75 F.3d 182, 185 (4th Cir. 1996) (emphasis added).

By no stretch of the imagination could Withers be considered to have provided full disclosure under section 3553(f). In fact, she rebuffed the efforts of the government to gain her assistance. The prosecutor testified at the sentencing hearing that he twice approached Withers before trial to acquire information, and both times she steadfastly denied her knowledge of the importation scheme. Furthermore, she continued to deny her culpability throughout the trial and, indeed, continues to deny her culpability before this court. As the district court pointed out, Withers' trial came down to a test of her credibility. The jury returned a verdict against Withers, in effect finding her assertion of ignorance to be false. Withers came nowhere close to meeting the burden of complete and honest disclosure Congress required as a condition for more lenient treatment under the safety valve statute. <u>See United States v. Montanez</u>, 82 F.3d 520, 523 (1st Cir. 1996).

Furthermore, this circuit requires defendants to acknowledge responsibility for their actions before they may qualify for an application of the safety valve. <u>Ivester</u>, 75 F.3d at 184; <u>see also United States v. Arrington</u>, 73 F.3d 144, 149 (7th Cir. 1996). <u>But see United States v. Shrestha</u>, 86 F.3d 935, 939 (9th Cir. 1996). The commentary to section 3E1.1, the portion of the Guidelines dealing with sentence reductions for the acceptance of responsibility, advises that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." Here, the jury found that Withers falsely denied her knowing involvement in a conspiracy to import heroin. This is such a far cry from the cooperative acceptance of responsibility envisioned in section 3553(f)(5) that we do not see how the district court could have failed to apply the ten-year mandatory minimum sentence for importing over one kilogram of heroin into the United States.

B.

The government argues that the appropriate Guidelines sentencing range for Withers' offense is 121-151 months. Since this exceeds the

7

ten-year mandatory minimum set forth in 21 U.S.C.§ 960, we must address the government's argument that the district court erred in awarding a minimal role in the offense adjustment and departing downward from the recommended base Guideline level of 32. See U.S.S.G. § 5G1.1(c)(2).

We review role in the offense adjustments for clear error. United States v. White, 875 F.2d 427, 431 (4th Cir. 1989). However, Congress has also instructed the courts to consider the"policy statements[ ] and official commentary of the Sentencing Commission" when applying the Guidelines. 18 U.S.C. § 3553(b); see also Koon v. United States, 116 S. Ct. 2035, 2044 (1996). The commentary to section 3B1.2 states that an adjustment based on minimal participation in an offense would be appropriate only "in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2 (emphasis added). In the instant case, Withers was given $15,000 to import over eight kilograms of heroin -- a quantity of drugs worth over one million dollars and over eight times the amount Congress felt sufficient to warrant a mandatory ten-year prison sentence. See 21 U.S.C. § 960. This could hardly be considered a "small amount of drugs." We also note that this circuit has rejected the view expressed by the district court that a defendant's status as a "courier" in a drug importation scheme automatically entitles the defendant to a role in the offense adjustment. United States v. Gordon, 895 F.2d 932, 935-36 (4th Cir. 1990). Under the circumstances, a minimal participation adjustment was plainly in error.[2]

A district court's decision to depart from the Sentencing Guidelines should be reviewed under an "abuse of discretion" standard. Koon, 116 S. Ct. at 2046. The district court granted Withers a seven-level downward departure for diminished capacity under section 5K2.13.

_____

[2] We note further that the district court subtracted four levels from the presentence report's recommended base level of 32. This base level, however, had already taken into consideration a two-level adjustment for "minor participation." The district court's additional four-level adjustment therefore had the impermissible effect of reducing the base level by six levels rather than the maximum allowable four. See U.S.S.G. § 3B1.2.

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense . . . .

The Guidelines, however, also instruct that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range . . . ." U.S.S.G. § 5H1.3. Accordingly, courts have held that in order to qualify for a departure under this section a defendant must be suffering from something greater than "emotional problems," United States v. Gentry, 925 F.2d 186, 188 (7th Cir. 1991), or "hardship," United States v. Johnson, 979 F.2d 396, 401 (6th Cir. 1992). A defendant must also demonstrate that his or her "significantly reduced mental capacity" bears a causal relationship to the crime. United States v. Goossens, 84 F.3d 697, 702 (4th Cir. 1996); see also United States v. Sammoury, 74 F.3d 1341, 1345-46 (D.C. Cir. 1996); Gentry , 925 F.2d at 188. This causal connection must consist of more than an emotional weakness that leaves one open to suggestion. Rather, in order to qualify for a diminished capacity departure, a defendant must show an inability "to process information or to reason." Goossens, 84 F.3d at 701; see also United States v. Barajas-Nunez, 91 F.3d 826, 831 (6th Cir. 1996).

The circumstances of this case do not support the district court's downward departure on the grounds of diminished capacity. The district court found that Withers' depression over the death of her mother four months prior to the October 1990 trip to Japan qualified her for a diminished capacity departure due to her state of "vulnerability" and "extreme mental disarray." The only evidence in the record that Withers suffered from depression prior to October 1990, however, was her own testimony and that of a friend who testified that she had talked to Withers about her depression. The only doctor that testified as to Withers' depression saw her only once in 1993, after she had become intertwined with the drug importation conspiracy and after she had begun using cocaine. See U.S.S.G. § 5K2.13 (forbidding downward departures where diminished capacity results "from voluntary use of drugs or other intoxicants"). Most importantly, there was no evidence

9

that Withers' depression affected her ability to reason or process information. Indeed, the evidence shows that she was fully capable of following a complex set of instructions to transport heroin successfully into the United States.

Thus, Withers suffered at most from emotional problems and not from any diminished mental capacity. Not only are emotional difficulties not an encouraged ground of departure within the meaning of section 5K2.13, they are an explicitly discouraged factor under section 5H1.3. If we were to approve the application of the diminished capacity departure in this case, we would be holding that anyone who could point to a sufficiently tragic event in his or her life would be eligible for a sentence reduction. The Seventh Circuit rejected just such a step in United States v. Pullen, 89 F.3d 368 (7th Cir. 1996). There, a defendant pointed to a childhood and adolescent history of sexual and physical abuse by his father as a reason for applying the "diminished capacity" departure. Despite the fact that a psychologist testified that the defendant suffered from a "schizoid disorder" that impaired "his ability to think and act clearly" the district court refused to apply the departure. Id. at 369-70. The Seventh Circuit affirmed, noting that "[i]f a miserable family history were in an average case a permissible basis for leniency . . . this would resurrect the pre-guidelines regime of discretionary sentencing." Id. at 371. To set such a low threshold for diminished capacity departures would create incentives for defendants to comb their personal circumstances in order to find evidence of hardship and misfortune. This search, we suspect, would almost always be fruitful given that adversity in its infinite variety comes with the journey of life. We hold that Withers was not entitled to a diminished mental capacity departure in this case.

The district court also made passing reference to that portion of the Guidelines dealing with coercion and duress, section 5K2.12. To the degree the court relied on that section for the seven-level downward departure, that reliance was misplaced. The commentary to section 5K2.12 states: "Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency." Here, there is no evidence in the record that Withers was under any sort of

10

threat when she undertook her criminal activity, much less under the sort of threat contemplated by section 5K2.12.

IV.

The government maintains that the district court refused to apply the statutory minimum and departed downward from the Guidelines in order to reach a predetermined result. Review of the record suggests that this contention may not be amiss. At the very beginning of the sentencing hearing the court stated:

> I note, for the record, what is very troubling in this case is that Bonita Freeman, who, as I understand it, played the exact same role in the conspiracy, was sentenced by the District Court in California to something like 31 or 33 months, a significantly lower sentence than what the statutory minimum would be in this case.

In the end, Withers was sentenced to 40 months, a sentence very close to that received by Freeman.

The district court's concern about the disparate sentences of Withers and Freeman was not an appropriate basis for a downward departure. In fact, this circuit has squarely held as much. United States v. Ellis, 975 F.2d 1061, 1066 (4th Cir. 1992). [3] To base a defendant's sentence on a co-conspirator's sentence is a short-sighted approach which ignores the Guidelines' attempt to eliminate unwarranted sen-

_____

[3] The circuits unanimously agree that disparate sentences among co-defendants is an impermissible ground for departure. See United States v. Wogan, 938 F.2d 1446, 1448-49 (1st Cir. 1991); United States v. Joyner, 924 F.2d 454, 459-61 (2d Cir. 1991); United States v. Higgins, 967 F.2d 841, 845 (3d Cir. 1992); United States v. Pierce, 893 F.2d 669, 678 (5th Cir. 1990); United States v. LaSalle , 948 F.2d 215, 218 (6th Cir. 1991); United States v. Dillard, 43 F.3d 299, 311 (7th Cir. 1994); United States v. Torres, 921 F.2d 196, 197 (8th Cir. 1990); United States v. Vilchez, 967 F.2d 1351, 1353-55 (9th Cir. 1992); United States v. Garza, 1 F.3d 1098, 1101 (10th Cir. 1993); United States v. Hendrieth, 922 F.2d 748, 752 (11th Cir. 1991); United States v. Williams, 980 F.2d 1463, 1467 (D.C. Cir. 1992).

11

tencing disparities nationwide. See United States v. Joyner, 924 F.2d 454, 460 (2d Cir. 1991). The Guidelines' goal of national sentencing uniformity is not aimed only at the particular criminal conduct that co-conspirators may share, but also addresses other factors that often vary between co-conspirators like acceptance of responsibility and assistance to the government. See United States v. Williams, 980 F.2d 1463, 1467 (D.C. Cir. 1992).

In this case, for example, the prosecution argued to the district court that Freeman agreed to cooperate with the government and assisted the DEA by making a controlled delivery of drugs to Washington National Airport. Freeman's assistance therefore qualified her for a substantial assistance departure under U.S.S.G. § 5K1.1. Withers, on the other hand, refused to cooperate in the slightest. To grant Withers a lower sentence based on the departures earned by Freeman would put her in a better position than a similarly situated defendant who was not so fortunate as to have a cooperating co-conspirator. This is precisely the sort of illogical disparity in sentencing that led to the adoption of the Sentencing Guidelines in the first place. See Koon, 116 S. Ct. at 2043-44 (citing S. Rep. No. 225, 98th Cong., 1st Sess. 38 (1983)).

We emphasize that the district court must apply the Guidelines and follow statutory directives in order to determine an appropriate sentence. To manipulate the Guidelines will reduce them to a sham set of rules which would exacerbate the very problem they were designed to correct -- unconstrained discretionary sentencing. See Koon, 116 S. Ct. at 2043-44. We decline to endorse an approach that would again reduce sentencing to a game of roulette in which the length of the sentence is determined by the draw of the judge.

V.

For the foregoing reasons, we affirm Withers' conviction, but we vacate and remand her case for resentencing. On resentencing, the court must impose a sentence consistent with the mandatory minimum prescribed by statute and within the Guidelines range without any departure or minimal role reduction.

AFFIRMED IN PART, VACATED AND REMANDED IN PART

12