**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-4967**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ABIMAEL ANTONIO DIAZ-CALDERON,

Defendant - Appellant.

_____

**No. 05-4976**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ELMER DE PAZ GARCIA,

Defendant - Appellant.

_____

**No. 05-4978**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SAUL SOLIS DIAZ,

                                        Defendant - Appellant.

                           ───────────────

                            **No. 05-4992**

                           ───────────────

UNITED STATES OF AMERICA,

                                         Plaintiff - Appellee,

         versus

ANGEL AUGUSTIN HERNANDEZ,

                                        Defendant - Appellant.

                           ───────────────

                            **No. 05-5055**

                           ───────────────

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellant,

          versus

ELMER DE PAZ GARCIA,

                                        Defendant - Appellee.

                           ───────────────

                            **No. 05-5059**

                           ───────────────

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellant,

versus

SAUL SOLIS DIAZ,

Defendant - Appellee.

———————————

**No. 05-5074**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

ANGEL AUGUSTIN HERNANDEZ,

Defendant - Appellee.

———————————

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (CR-05-15)

———————————

Argued: October 25, 2006                    Decided: February 1, 2007

———————————

Before WILKINSON, MICHAEL, and DUNCAN, Circuit Judges.

———————————

Affirmed in part; vacated and remanded in part by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Wilkinson joined. Judge Michael wrote a separate opinion concurring in part and dissenting in part.

———————————

**ARGUED:** Dale Warren Dover, Alexandria, Virginia; Michael Steven Arif, MARTIN & ARIF, Springfield, Virginia; Thomas Brian Walsh, PETROVICH & WALSH, P.L.C., Springfield, Virginia; Joseph John McCarthy, Alexandria, Virginia, for Appellants/Cross-Appellees.

3

Lawrence Joseph Leiser, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Michael Frank, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee/Cross-Appellant.

—————————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Abimael Antonio Diaz-Calderon, Elmer De Paz Garcia, Saul Solis Diaz, and Angel Augustin Hernandez appeal their convictions and sentences arising out of a conspiracy to import cocaine into the United States from Guatemala.  For the reasons that follow, we affirm all of the appellants' convictions and affirm the sentences of Diaz-Calderon and Diaz.  We vacate the sentences of Garcia and Hernandez, and remand for resentencing.

I.

On December 11, 2004, TACA Airlines flight number 584 arrived at Washington-Dulles International Airport ("Dulles") from Guatemala carrying a courier employed by Hyattsville, Maryland-based Nor Oriente Express.  The courier was transporting a number of duffel bags filled with various items from Guatemala to the United States.  When the United States Customs and Border Protection service inspected these bags, officers discovered three separate packages of cocaine hidden in separate individually wrapped car seat cushions.  Each cushion was addressed to a specific individual in Maryland: one containing 281 grams of cocaine was addressed to Avigail Morataya, one containing 78 grams was addressed to Jorge Meija, and one containing 543 grams was addressed to Gunder Diaz.

After removing and weighing each of the packages of cocaine, customs officers combined the entire quantity of drugs in a single

5

bag for storage and transport.  Then, in order to identify the intended recipients of the packages, special agents with Immigration and Customs Enforcement ("ICE") arranged for a controlled delivery of the seat cushions through--and with the cooperation of--Nor Oriente Express in Maryland.  In setting up the operation, ICE agents replaced the packages of cocaine with packages of a "sham" substance that appeared similar to cocaine, but only contained trace amounts of the drug.  Agents then refashioned each of the seat cushions to appear as it had before discovery of the cocaine.

On December 12, 2004, as the ICE agents were setting up the controlled delivery, appellant Diaz entered the facility and asked for the package addressed to Jorge Meija.  Diaz was told the package was not ready and that he would have to return later.  Over the following three hours, appellants Garcia, Diaz-Calderon, and Diaz appeared at Nor Oriente Express separately and asked for the packages addressed to Gunder Diaz, Avigail Morataya and Jorge Meija, respectively.  Each was arrested after signing for the package under the assumed name.

After arresting appellant Diaz-Calderon, ICE agents found several documents in his possession, including a letter that indicated three packages that he requested would be arriving for him in a car seat cushion.  The second document was a handwritten

note that contained the address listed on the package Diaz-Calderon retrieved.

After ICE agents arrested appellant Diaz and he waived his Miranda rights, Diaz told agents that Lucero Lopez, who was arrested while waiting for Diaz at Nor Oriente Express, paid him $20 to retrieve the package addressed to Jorge Meija. Diaz admitted that he thought the package contained drugs and knew that what he was doing was illegal because he had to use an assumed name and Lopez did not want to retrieve the package.

After appellant Garcia was arrested and waived his Miranda rights, he cooperated with ICE agents by arranging to hand off the Gunder Diaz package to Hernandez, the person who directed him to retrieve it. Shortly thereafter, Hernandez appeared, along with another individual, to retrieve the package from Garcia. ICE agents promptly arrested Hernandez. During an ensuing interview at the scene, Hernandez denied knowledge of the package, claimed that it contained fan belts, and said that it was for a friend whose phone number he did not know. Believing that Hernandez was lying, ICE agents terminated the interview. However, as Hernandez was led away, he admitted that Lucero Lopez sent him to pick up the package and he had lied out of fear that Lopez would determine that Hernandez "was giving him up basically." J.A. 620.

In March 2005, the government filed a Second Superceding Indictment that charged each appellant with a single count of

7

conspiracy to import cocaine in violation of 21 U.S.C. §§ 952(a) & 963, unlawful importation of cocaine in violation of 21 U.S.C. § 952(a), and unlawful distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The district court conducted a bench trial in July 2005 at which it found each appellant guilty of one count of conspiracy to import cocaine and dismissed the remaining charges.

The district court sentenced Diaz-Calderon to 63 months imprisonment after attributing to him the entire amount of cocaine in all three car seat cushions. The district court sentenced Garcia to 21 months, Hernandez to 24 months, and Diaz to 21 months, after attributing 78 grams of cocaine, which was the smallest individual quantity contained in any of the three seat cushions, to each appellant. Appellants timely appealed both their convictions and sentences. The government cross-appealed the sentences of Garcia and Hernandez.

Appellants raise two primary arguments on appeal.[1] First, appellants challenge the sufficiency of the evidence on numerous points regarding their convictions for conspiracy to import a controlled substance. Second, appellants challenge the quantity of drugs used by the district court to calculate each of their sentences. We consider each argument in turn.

---

[1]We have reviewed each of appellants' arguments not discussed herein and find each without merit.

II.

Appellants first raise arguments regarding the sufficiency of the evidence underlying their convictions. Our review of a challenge to the sufficiency of evidence is extremely deferential. Indeed,

> [w]e must uphold a . . . verdict if there is substantial evidence, viewed in the light most favorable to the Government, to support it. Substantial evidence is that evidence which a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.

United States v. Cardwell, 433 F.3d 378, 390 (2005) (quotations omitted). With this standard in mind, we turn to appellants' arguments.

A.

Appellants first argue that the government did not offer sufficient evidence to prove that the cocaine at issue was imported from Guatemala, as alleged in the indictment. Appellants find insufficiency in the fact that the customs officer, who testified at trial, could only circumstantially connect the Nor Oriente courier with TACA flight 584 from Guatemala. However, the circumstances relied on by that officer sufficiently establish that the cocaine entered the United States from Guatemala.

The customs officer testified that TACA regularly operated flight 584 between Guatemala and Dulles; that flight 584 arrived at Dulles on December 11, 2004; and that passengers from that flight

were the only individuals clearing customs at the time the cocaine was discovered in the courier's bags. J.A. 457-60. Even without viewing this evidence in a light most favorable to the government, these facts clearly support the conclusion that the Nor Oriente Express courier, along with the packages of cocaine, arrived on flight 584 from Guatemala.

B.

Appellants Garcia, Hernandez, and Diaz next argue that the government failed to offer sufficient evidence to prove that they knowingly entered a conspiracy to import cocaine. Each argues that he had no knowledge of the criminal enterprise because he was unaware of the true contents of the package he handled. The record, however, demonstrates that these appellants either knew or were willfully blind to the conspiracy.

In order to prove a conspiracy charge, the government must establish, inter alia, that the defendant knowingly agreed to engage in unlawful activity. United States v. Cropp, 127 F.3d 354, 361 (4th Cir. 1997); United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991). The government can establish knowledge by showing that a defendant either actually knew of the conspiracy, Cropp, 127 F.3d at 361, or was willfully blind to it by "purposely clos[ing] his eyes to avoid knowing what was taking place around him." United States v. Ruhe, 191 F.3d 376, 384 (4th Cir. 1999) (quoting United States v. Schnabel, 939 F.3d 197, 203 (4th Cir. 1991)).

10

Because the circumstances of each appellant's involvement differed slightly, we will consider the knowledge of each individually.

With respect to Diaz, the government presented clear evidence of willful blindness. After his arrest, Diaz admitted to believing that the package he retrieved from Nor Oriente contained illegal drugs. Diaz, however, took no steps to confirm or deny such suspicions and did not let them prevent him from retrieving the package. On these facts, it is clear that Diaz "suspected [illegality;] realized its probability; but . . . refrained from obtaining the final confirmation because he wanted . . . to be able to deny knowledge." Ruhe, 191 F.3d at 384 (citation omitted). Therefore, we are unpersuaded by his argument on this point.

With respect to Hernandez, the record contains a plethora of evidence that establishes his actual knowledge of the conspiracy. Put simply, we find it implausible that Hernandez had no knowledge of the conspiracy, and yet (1) engaged and directed Garcia in the retrieval of a package containing 543 grams of cocaine; (2) appeared almost immediately after Garcia phoned him to take possession of the package; and (3) had sufficient fear of Lucero Lopez to spin a series of incredible--and eventually admitted--lies to ICE agents. The more reasonable and plausible interpretation of these facts is that Hernandez was an integral member of the conspiracy with actual knowledge of its illicit nature. Therefore, we find no merit to his argument.

11

Finally, with respect to Garcia, the totality of the circumstances surrounding his retrieval of the Gunder Diaz package was sufficient for the district court to conclude his willful blindness to the conspiracy. We find to be determinative the fact that Garcia retrieved an internationally shipped package using a false name at the direction of Hernandez, who had no apparent connection to the package and who, by all accounts, was capable of retrieving it himself. Further damning is the fact that Garcia and Hernandez had arranged a rendezvous point several miles from Nor Oriente Express because Garcia believed that Hernandez did not want the package delivered to his apartment. Taken together, we believe these facts establish, at the very least, that Garcia "purposely closed his eyes to" both the illegality of his actions and the enterprise in which he was involved. Ruhe, 191 F.3d at 384 (quotations omitted).[2]

We do, however, recognize that, although the evidence against Garcia is damning, it does not inexorably lead to a conclusion of willful blindness. A finder of fact conducting a plenary review of this evidence in the first instance might very well reach a conclusion different from ours. We, however, are not afforded the luxury of such broad review. Rather, we are constrained to view

---

[2]Because we conclude that "the evidence supports an inference of deliberate ignorance," we do not agree with our dissenting colleague that the stringency of the willful blindness doctrine prevents its application on these facts. Ruhe, 191 F.3d at 384 (quotations omitted).

the "evidence in the light most favorable to the government" specifically to determine whether it supports the defendant's guilt. United States v. Wilson, 198 F.3d 467, 470 (4th Cir. 1999) (quotations omitted). When we do so, we are left with no doubt that a reasonable trier of fact could find willful blindness where an individual retrieves a package under an assumed name for a third party, who could have retrieved the package himself, without inquiring as to the necessity or legality of his actions. Therefore, we find no merit to Garcia's argument.

C.

Appellants next challenge their convictions by arguing that they could not have participated in a conspiracy to import because any such conspiracy concluded prior to their involvement. This argument fails in light of United States v. Lowry, in which we held that "importation of controlled substances . . . is a 'continuous crime' that is not complete until the controlled substance reaches its final destination." 675 F.2d 593, 596 (4th Cir. 1982) (quotation omitted). The fact that the cocaine, or the substitute therefor, remained sealed in the car seat cushions throughout the times relevant to this appeal--with none of the appellants directly handling or attempting to remove it--supports a conclusion that the drugs never reached their final destination. Therefore, the

13

conspiracy to import was ongoing at the time of appellants' involvement and we reject their argument.[3]

D.

Appellants next challenge the government's use of substitute cocaine in the controlled delivery of the seat cushions, arguing that there was insufficient evidence of the amount or composition of the substance to support their convictions. In essence, appellants argue that the government could secure their conviction only if it proved that the car seat cushions contained actual cocaine when retrieved by appellants. This argument fails, however, because each appellant's conspiracy conviction flows from his agreement to accomplish an illegal goal, rather than its actual--or even possible--accomplishment.

"The law of conspiracy . . . permit[s] the imposition of criminal sanctions for [an] agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed." United States v. Feola, 420 U.S. 671, 694 (1975); see United States v. Giry, 818 F.2d 120, 126 (1st Cir. 1987) ("[T]he crime of conspiracy . . . is complete upon the agreement to do an unlawful act as implemented by one or more overt acts."

---

[3]This conclusion also forecloses appellants' argument that venue was improper in the Eastern District of Virginia. In drug importation cases, venue is appropriate in any jurisdiction through which the drugs pass. Lowry, 675 F.2d at 596. Given that the drugs at issue here passed through the Eastern District of Virginia by arriving at Dulles, venue was appropriate in that jurisdiction.

14

(quotations omitted)).  Indeed, factual impossibility is not a defense to a charge of conspiracy.  United States v. Jimenez Recio, 537 U.S. 270, 275 (2003); United States v. Dixon, 449 F.3d 194, 202 (1st Cir. 2006); United States v. Burke, 431 F.3d 883, 886 (5th Cir. 2005); United States v. Belardo-Quinõnes, 71 F.3d 941, 944 (1st Cir. 1995); United States v. Clemente, 22 F.3d 477, 480-81 (2d Cir. 1994).  In the context of drug crimes, these principles leave a defendant culpable for conspiracy even if no illegal substance was ever involved.  Burke, 431 F.3d at 886; United States v. Murray, 527 F.2d 401, 411-12 (5th Cir. 1976).

These well-established principles negate the relevance of any failure on the part of the government to prove the quantity or composition of the substitute cocaine.  Put simply, each appellant's conviction rests on his agreement to import cocaine and action taken in furtherance thereof, rather than any specific aspect of the actual substance involved.


III.

Appellants next argue that the district court erred in the quantity of drugs it used to calculate their sentences.  On cross-appeal, the government contends that the district court erred by attributing too small a quantity of drugs to Garcia and Hernandez.  Normally, we review challenges to the determination of drug quantities for clear error.  United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004).  However, here, the parties do not dispute the

15

amount of drugs at issue and, instead, focus on whether the district court properly applied the guidelines in the attribution of drug quantities for sentencing purposes. Where we are confronted solely with an issue of "guidelines application, our standard of review approaches de novo." United States v. Fullilove, 388 F.3d 104, 106 (4th Cir. 2004).

Under the guidelines, the sentence of a defendant convicted of a drug importation crime is calculated based on the quantity of drugs that he personally "aided, abetted, counseled, commanded, induced, procured, or willfully caused" to be imported into the United States. U.S.S.G. § 1B1.3(a)(1)(A) (2004). In other words, a defendant is responsible for the full amount of drugs "with which he was directly involved." § 1B1.3(a)(1)(A), application note 2; Fullilove, 388 F.3d at 106-07. A defendant's lack of knowledge or foresight of a specific quantity of drugs is irrelevant for sentencing purposes where such a direct connection exists.[4] See §

---

[4]Issues of foreseeability do play a role in calculating a drug conspiracy sentence where a defendant lacks a direct connection to certain quantities of drugs involved in the enterprise. See § 1B1.3(a)(1)(B) (calculating base offense level for conspiracy based on "all reasonably foreseeable acts and omissions of others in furtherance of . . . jointly undertaken criminal activity"); United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) ("The defendant need not have actual knowledge of the exact quantity of narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved."). Such concerns are not at issue here because the district court held that none of the appellants could have foreseen any of the drug quantities involved and the government does not challenge this finding on appeal.

1B1.3, illustration (a)(1) (noting that a defendant who carries a suitcase filled with a controlled substance "is accountable for the controlled substance in the suitcase regardless of his knowledge or lack of knowledge of the actual type or amount of that controlled substance"); United States v. Imariagbe, 999 F.2d 706, 707-08 (2d Cir. 1993) (holding defendant liable for full amount of heroin in suitcase even though he believed he was carrying a significantly smaller quantity). With this background in mind, we turn to appellants' arguments.

The district court properly attributed to Diaz-Calderon the full 902 grams of cocaine contained in all three car seat cushions. The letter found in Diaz-Calderon's possession at the time of his arrest directly linked him to all three packages and justified calculating his sentence based on the cocaine contained therein. Therefore, we find no error in Diaz-Calderon's sentence.[5]

The district court, however, erred by attributing to both Hernandez and Garcia the 78 grams of cocaine that was the "smallest amount of drugs . . . in any of the three packages," rather than the 543 grams in the package that both handled. J.A. 890-91; see

---

[5]We also find no merit to Diaz-Calderon's argument that the 902 grams of cocaine used by the district court at sentencing was not found by the finder of fact beyond a reasonable doubt, and therefore its use violated the principles set forth in United States v. Booker, 543 U.S. 220 (2005), and its progeny. The district court sat as finder of fact here and specifically found that Diaz-Calderon was responsible for the entire amount of cocaine beyond a reasonable doubt. J.A. 862-64.

17

<u>also</u> J.A. 879.  The court applied the smaller amount out of concern that the uneven distribution of cocaine across the three packages would result in divergent sentences for Hernandez, Garcia and Diaz for what the court viewed as essentially the same conduct (i.e., retrieving a package of cocaine with no specific knowledge of its contents).  <u>See</u> J.A. 879, 890-91.  In other words, the court viewed each of these appellants as similarly culpable--and deserving of a similar sentence--because none was aware of or could have foreseen the actual amount of cocaine in the packages that they handled.  <u>Id.</u>  The sentencing guidelines, however, do not support that analysis.

As previously noted, a defendant is culpable for the entire amount of drugs with which he is directly involved, regardless of knowledge or foresight.  <u>See</u> § 1B1.3, comment 2, illustration (a)(1); <u>Imariagbe</u>, 999 F.2d at 707-08.  Given that both Hernandez and Garcia directly handled the Gunder Diaz package, the district court should have sentenced them based on the full 543 grams contained therein without considering their knowledge or foresight.  Such quantity would have yielded a base offense level of 26 and a guidelines range of 63 to 78 months,[6] rather than the base offense level of 16 and the resulting 21 to 27 month range used by the district court.  Therefore, we conclude that the district court

---

[6]Both Hernandez and Garcia were assigned a criminal history score of I.

18

calculated the sentences of both Hernandez and Garcia based on a misapplication of the sentencing guidelines. Both sentences are vacated as unreasonable and remanded for resentencing. See United States v. Green, 436 F.3d 449, 457 (4th Cir. 2006) (holding that if a "sentence is based on an error in construing or applying the Guidelines, it will be found unreasonable and vacated").[7]

Finally, with respect to Diaz, we conclude that the district court properly calculated his sentence based on the 78 grams of cocaine that was contained in the Jorge Meija package that he retrieved from Nor Oriente Express. His direct involvement with that package was sufficient to justify calculating his sentence based on the amount of drugs contained therein.

IV.

Based on the foregoing, we affirm each appellant's conviction; affirm the sentences of Diaz and Diaz-Calderon; and vacate the sentences of Hernandez and Garcia, and remand each to the district court for resentencing.

AFFIRMED IN PART; VACATED AND REMANDED IN PART

---

[7]We note that the district court is not without recourse on remand to address its equitable concerns. The district court retains the discretion to select a sentence that varies from the prescribed guidelines range in order to serve the factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2005), so long as the court "articulate[s] the reasons for the sentence imposed," the sentence falls within the statutorily prescribed range, and the sentence is reasonable. United States v. Hillyer, 457 F.3d 347, 351 (4th Cir. 2006).

19

MICHAEL, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion to the extent it affirms the convictions and sentences of Abimael Antonio Diaz-Calderon and Saul Solis Diaz. I respectfully dissent from the determination that the government presented sufficient evidence to convict Elmer De Paz Garcia and Angel Augustin Hernandez. A conviction for conspiring to import a controlled substance requires evidence that the defendant knew that the conspiracy involved such a substance. The knowledge requirement is not satisfied by a mere showing that the defendant knew that he was involved in some form of illicit activity. The government produced no evidence to support a finding that either Garcia or Hernandez knew of his involvement in a drug conspiracy. I would therefore reverse their convictions.

I.

On December 12, 2004, Garcia went to the office of Nor Oriente Express in Hyattsville, Maryland, to pick up a package at Hernandez's request. The package had previously been intercepted by Immigration and Customs Enforcement (ICE) agents when it arrived at Washington-Dulles International Airport from Guatemala. The ICE agents structured a controlled delivery of the package through Nor Oriente Express.

At Nor Oriente, Garcia asked for a package addressed to "Gunder Diaz" and signed a receipt with that name. He was

20

immediately arrested.  He appeared surprised when told that he was being arrested for picking up a package containing drugs.  Garcia told the agents that another person had sent him to retrieve the package, and he cooperated with the agents by arranging to meet that person in the parking lot of a nearby store.  When the other person, Hernandez, arrived at the meeting place and took the package from Garcia, Hernandez was also arrested.  Hernandez initially denied knowing anything about the package, but proceeded to offer a series of explanations.  He claimed that the package was a gift of fan belts from a friend.  He then said that the package was intended for "Dunio," but he could not remember Dunio's phone number.  He finally admitted that Lucero Lopez was the person who asked him to pick up the package, and he said that he had lied about Dunio because he was scared about giving up Lopez.

## II.

The behavior of Garcia and Hernandez is suspicious, but it does not support a reasonable finding that either man knew or believed that the package contained drugs.  Such knowledge or belief is essential to support a conviction for a drug conspiracy. See United States v. Lewis, 676 F.2d 508, 512 (11th Cir. 1982).

To establish a conspiracy to import a controlled substance, the government must prove beyond a reasonable doubt that (1) an agreement existed between two or more persons to import such a

substance; (2) the defendant knew of the agreement or conspiracy; and (3) the defendant knowingly and voluntarily became a part of the conspiracy. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996). At a minimum, the government must show that the defendant knew or was willfully blind to the fact that the conspiracy involved the importation of a controlled substance. See Lewis, 676 F.2d at 512. The defendant need not know the particular drug involved so long as he knew that the essential objective of the conspiracy was to import drugs. Id. Evidence that he only knew the conspiracy involved some form of illegal conduct does not suffice to prove a drug conspiracy.

The majority affirms Garcia's conviction because it concludes that a reasonable trier of fact could find that he was willfully blind to the nature of the conspiracy. I disagree. Knowledge is imputed to an alleged conspirator under a willful blindness theory only in rare circumstances. United States v. Ruhe, 191 F.3d 376, 385 (4th Cir. 1999). A finding of willful blindness is appropriate only when the evidence shows that the defendant suspected the nature of the conspiracy, realized its probability, and refrained from confirming his suspicions because he wanted to be able to deny knowledge later. See id. at 384-85. In other words, the evidence must at least support an inference that the defendant purposely remained ignorant of the nature of the illegal acts. United States

22

v. Withers, 100 F.3d 1142, 1145 (4th Cir. 1996).  This requires more than mere negligence in not obtaining knowledge.  See id.

The evidence against Garcia boils down to this: (1) he agreed to pick up a package addressed neither to him nor to the person who asked him to retrieve it; (2) he signed for the package under a false name; and (3) he agreed, at the agents' request, to deliver the package to Hernandez in a public place rather than at Hernandez's home.  Garcia retrieved the package at a legitimate place of business, and nothing indicated that the package contained drugs.  There was no evidence that Garcia had  performed similar tasks in the past or that he had prior involvement in drug activity that might have raised his suspicions on this occasion.  There was also no evidence that Garcia was paid to pick up the package or that he knew Lopez, the person who asked Hernandez to retrieve the package.  Cf. Withers, 100 F.3d at 1144-45.  The fact that Garcia did not sign his own name is suspicious, but it is not enough to permit a reasonable factfinder to conclude that Garcia was willfully blind to his participation in a conspiracy to import drugs.  See United States v. Samad, 754 F.2d 1091, 1099 (4th Cir. 1984).  At most, the circumstances might have caused him to suspect that something illicit was afoot with respect to the package.  His failure to confirm this suspicion, however, cannot support the more specific finding that he was willfully blind to his involvement in a drug conspiracy.

23

For similar reasons, I would conclude that Hernandez neither had actual knowledge of nor was willfully blind to the nature of the drug importation conspiracy. The evidence against Hernandez indicates that he had more reason than Garcia to suspect some form of illicit activity, but it fails to show either that Hernandez knew he was involved in a drug conspiracy or suspected that drugs were involved. Even when viewed in the light most favorable to the government, the evidence shows only that Hernandez was suspicious enough of the package's contents to send someone else to retrieve it and to provide the agents with conflicting false stories about it. A factfinder here cannot make the leap from suspicion of illegal activity to suspicion of drug activity without additional evidence, such as some indication that Hernandez had prior experience in the drug trade or knowledge of Lopez's involvement with drugs, which would have alerted him to the nature of the conspiracy. A defendant cannot knowingly and willfully join a drug conspiracy unless he knows its nature or was willfully blind to it. Hernandez does not fit in either category.

The power to prosecute is a mighty power, and it must be exercised with utmost care. I believe the prosecution here should have exercised more care in evaluating the strength of its case before seeking convictions against Garcia and Hernandez. I would reverse their convictions for lack of sufficient evidence.

24