UNITED STATES of America,
Plaintiff–Appellee,
Cross–Appellant,

v.

Mark Kevin GENTRY,
Defendant–Appellant,
Cross–Appellee.

Nos. 89–3491, 90–3097.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1991.

Decided Feb. 12, 1991.

Rehearing Denied March 12, 1991.

Rodger A. Heaton, Asst. U.S. Atty., Indianapolis, Ind., Frances C. Hulin, Asst. U.S. Atty., Danville, Ill., for plaintiff-appellee, cross-appellant.

Gary F. Geisler, Geisler, Waks & Geisler, Decatur, Ill., for defendant-appellant, cross-appellee.

Before CUMMINGS, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

In the wake of a few maniacs who poisoned foods and medicines, causing not only deaths but also great expense as firms recalled their products, there followed extortion: people threatened to announce that they had poisoned a particular firm's products unless the manufacturer bought them off. See H.R.Rep. No. 98–93, 98th Cong., 1st Sess. 3 (1983), 1983 U.S.Code Cong. & Admin.News, p. 1257. To deal with the plague, Congress enacted 18 U.S.C. § 1365(c)(1), which makes it a felony to communicate a false report of food tampering.

Kevin Mark Gentry is no extortionist, but he made a false report of food tampering. On May 2, 1989, he told fellow employees—plus the security force of the mall where he worked—that he had bit into a pin when he ate M & M candy bought from a vending machine. One of Gentry's fellow employees found some metal embedded in the candy. Sheriff's deputies who investigated the report found Gentry's claim hard to believe and asked him to take a polygraph test. Gentry did; the examiner concluded that he was lying; after the examiner switched off the machine, Gentry confessed that he had put the pin in the candy and made the report to get attention. He was prosecuted for violating § 1365(c)(1) and received a sentence of 12 months' imprisonment.

■■ Gentry's two arguments are futile. He contends that the statement made to the polygraph examiner should have been suppressed as involuntary, but the district court found with ample support in the record that Gentry was not in custody at the time he made the statements and that the entire proceeding, along with the statements, was voluntary. Gentry also objects to testimony from an employee of the manufacturer that there were no other reports of pins in M & M candy. The testimony was relevant; it implies that the pin came from Gentry rather than the factory (or a tamperer other than Gentry). And Fed.R.Evid. 803(7) allows this use of business records to show the nonoccurrence of an event.

The government's cross appeal presents the only substantial issue. The sentencing guidelines prescribe a base offense level of 16 for Gentry's crime. U.S.S.G. 2N1.2(a). That translates to a sentencing range of 21–27 months for one who, like Gentry, has a short criminal record. The district court departed downward by sentencing Gentry to 12 months in prison. The judge gave two reasons: that Gentry's case is atypical, and that Gentry suffers from reduced mental capacity. The first reason is untenable, the second inadequately supported.

■ Congress limited departures from the guidelines to circumstances "not ade-quately taken into consideration" by the Sentencing Commission. 18 U.S.C. § 3553(b). Features that make a crime sufficiently unusual ("atypical") may well have escaped the Commission's attention, justifying departure. See U.S.S.G. chapter 1, part A, Introduction 4(b); *United States v. Vasquez*, 909 F.2d 235, 240–42 (7th Cir. 1990). Yet the district judge did not identify any such feature. Indeed, the judge himself characterized as "not a really strong argument" the proposition that Gentry's crime is atypical. If the Commission had neglected the difference between false reports that involve extortion and those that do not, there might be a basis for departure. But § 2N1.2(b)(1) provides for an increase in the offense level if the offense involves extortion, and application note 1 suggests upward departure if death, bodily injury, or substantial monetary loss ensues. Patterns such as Gentry's—no extortion, no injury, slight monetary loss—then must be the norm for base offense level 16.

■ Gentry's mental condition might be the basis of departure under U.S.S.G. 5K2.-13 (policy statement), which provides:

If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

A psychologist concluded that Gentry suffers from "emotional problems" but could find no mental illness. The record does not contain a conclusion that Gentry has "significantly reduced mental capacity", and the district court did not find that any reduction "contributed to the commission of the offense". Neither the district judge's sentencing memorandum nor the probation officer's report on which it was based addresses the subject of causation.

■■ Appellate review of departures from the guidelines is deferential. *United*

*States v. Marshall*, 908 F.2d 1312, 1326 (7th Cir.) (in banc), cert. granted on another issue under the name *Chapman v. United States*, —— U.S. ——, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). We must ensure, however, that before departing the sentencing judge considered all factors that the guidelines make relevant. Pointing to a mental condition, without assessing whether the condition amounts to *"significantly* reduced mental capacity" (emphasis added) or whether this reduction "contributed to the commission of the offense", does not supply the necessary assurance. Whether § 5K2.13 supports a departure is a question the district judge should address explicitly, in the terms of that policy statement. The court should consider, in addition to questions of severity and causation, whether a false report of tampering is a "non-violent offense" given the definition of "crime of violence" in U.S.S.G. 4B1.-2(1)(i) and the link between that definition and the term "non-violent offense" in § 5K2.13.

There is a further question whether the degree of departure is appropriate. Several cases say that the extent of upward departure must be linked to the structure of the guidelines. E.g., *United States v. Fonner*, 920 F.2d 1330, 1331–32 (7th Cir.1990); *United States v. Schmude*, 901 F.2d 555, 559–60 (7th Cir.1990); *United States v. Ferra*, 900 F.2d 1057, 1061–64 (7th Cir.1990); *United States v. Scott*, 914 F.2d 959, 963 (7th Cir.1990). Downward departures, the mirror image, must be justified in the same fashion. The project of the guidelines is to produce similar sentences for similar conduct across the nation, a project that cannot succeed if the justification for slight departure allows the judge to cast the guidelines aside. More than 15% of all cases end in departures, according to the Sentencing Commission's annual report, and excluding such a large group from the effort to produce consistent sentences would put a big dent in the structure. Gentry's sentence was cut in half (to 12 months, from a range with a mid-point at 24 months) without adequate explanation for the extent of departure. Such a large percentage change requires explicit justification.

The conviction is affirmed. The sentence is vacated, and the case is remanded for resentencing consistent with this opinion.