# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 96-30844

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PATRICK HOUGH HARRINGTON,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Louisiana

June 2, 1997

Before POLITZ, Chief Judge, KING, Circuit Judge, and FOLSOM,[*] District Judge.

POLITZ, Chief Judge:

Patrick Hough Harrington appeals his sentence on remand. Concluding that the district court properly applied the Sentencing Guidelines, we affirm.

## BACKGROUND

Harrington, a licensed attorney, pled guilty to one count of conspiracy to induce the illegal entry and to transport aliens into the United States and two counts of smuggling aliens into the United States.[1] While awaiting sentencing,

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

[1] 8 U.S.C. § 1324(a)(1) and 18 U.S.C. § 371.

he concocted a scheme to create a basis for the withdrawal of his guilty pleas. He dispatched Damon Paul Cheatwood, a layman whom he portrayed as an attorney associate, to Colorado to contact two women Harrington had smuggled illegally into the United States. Harrington provided Cheatwood with two affidavits, instructed him to secure the signatures of the women on the affidavits, and authorized Cheatwood to pay each $200 in exchange for their signatures. The affidavits stated that Harrington had not transported the women into the United States and did not know they were illegal aliens; that a border patrol agent had promised the women citizenship in exchange for making false statements against Harrington; and that an Immigration and Naturalization Service agent informed the women that Harrington had hired someone to kill them. Each of the statements in the affidavits was a blatant falsehood.

Harrington became concerned that the signatures on the affidavits could not be verified in court because the women were illegal aliens. To overcome this hurdle and to ensure the acceptance of the affidavits, Harrington and Cheatwood hired a court reporter, a video camera operator, and a translator to take the affidavits. Cheatwood thereafter contacted one of the women, but she refused to cooperate and informed the FBI of Cheatwood's proposal. The FBI then recorded a telephone conversation in which Harrington told Cheatwood that he would pay the women $400 each to sign the affidavits and that he was concerned about the women remaining in the United States.[2]

---

[2]Cheatwood consented to recordation of his conversation with Harrington.

2

Harrington subsequently was indicted for conspiracy to obstruct justice and obstruction of justice.[3] Harrington pled guilty and was sentenced to 60 months imprisonment. After a panel of this court vacated that sentence,[4] Harrington was sentenced on remand to 60 months imprisonment. He timely appealed.

## ANALYSIS

Harrington contends that the district court erred by enhancing his sentence on the basis of abuse of a position of public trust and by increasing his criminal history category from category I to III. We review the trial court's findings of fact for clear error and its application of the sentencing guidelines *de novo*.[5]

### 1. Abuse of a Position of Public Trust

Section 3B1.3 of the Sentencing Guidelines provides:

> If the defendant abused a position of public or private trust...in a manner that significantly facilitated the commission or concealment of the offense, increase [the defendant's base offense level] by 2 levels.

The district court concluded that, as a lawyer, Harrington held a position of public trust and abuse of that position significantly facilitated the commission of his offenses. We find absolutely no error in this manifestly sound and well-reasoned conclusion.

The government and Harrington agree that a lawyer occupies a position of

---

[3] 18 U.S.C. §§ 2, 371 and 1503.

[4] 82 F.3d 83 (5th Cir. 1996).

[5] *See United States v. Brown*, 7 F.3d 1155 (5th Cir. 1993).

public trust. This is a given. The duty of lawyers includes, for trial lawyers, the prosecution and defense of persons and causes in courts of law. In doing so, lawyers represent not only the interests of clients, but the interests of our entire judicial system, indeed the interests of our society. The integrity of our judicial system inextricably is intertwined with the integrity of our trial lawyers. Consequently, it cannot be gainsaid that lawyers occupy a position of public trust.[6] It would be rank folly to suggest otherwise.

Harrington's abuse of this position significantly facilitated both the conspiracy and the obstruction of justice. When Harrington instructed Cheatwood to have the women sign the affidavits Cheatwood asked Harrington if it would be legal to have them do so. Harrington assured Cheatwood that it was perfectly legal and that the women could simply refuse to sign the affidavits if they so chose. When Harrington contacted Holly Conklin, a court reporter in Denver, he identified himself as a lawyer. Harrington wanted to hire Conklin to take the affidavits and Conklin made known that she would do so only if Harrington were a lawyer. When Harrington contacted Guadalupe Duran, a translator, he gave her his law office answering service number. In later discussions with Duran Harrington repeatedly identified Cheatwood as his associate. Further, when Cheatwood hired Kim Love, a video camera operator, he gave Love one of Harrington's business cards and credit cards. The business card clearly identified Harrington as a lawyer.

---

[6]*See United States v. Post*, 25 F.3d 599, 600 (8th Cir. 1994) ("We conclude that Post's status as a licensed Arkansas attorney placed him in a position of public trust.").

The record unambiguously establishes that Harrington used and abused his position as a lawyer in his effort to secure the fraudulent affidavits of the two women. Every person contacted by Harrington and Cheatwood knew that Harrington was a lawyer. This knowledge shrouded the actions of Harrington and Cheatwood with a false presumption of regularity and legality, and ensured the cooperation of the court reporter, the translator, and the video camera operator. For this pernicious conduct, Harrington's sentencing guidelines computation was subject to the two-level enhancement provided by section 3B1.3 of the Sentencing Guidelines.

## 2. Criminal History Category

Section 4A1.3 of the Sentencing Guidelines provides:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

Harrington's criminal history category was originally established as category I. After considering Harrington's four prior convictions the district court increased it to category III. We find no error in that increase.

Harrington had three prior convictions for contempt of court, including one for the providing of false information to the court. In addition, Harrington was convicted of reckless driving. That conviction resulted after Harrington led police on a high speed chase and, in the process, ran six cars off the road.[7]

---

[7]Harrington's convictions for contempt of court and reckless driving were not included in the original computation of his criminal history category. *See* Sentencing Guidelines §

Although non-violent, each of Harrington's prior convictions clearly demonstrate his manifold disrespect for the law and our judicial system. Furthermore, Harrington's prior and current convictions bear a striking similarity. All are based upon Harrington's attempts to hinder, obstruct, or pervert the judicial system to his personal advantage.

Harrington's criminal history category did not accurately reflect the seriousness of his criminal history. Consequently, an increase in his criminal history category was warranted, and that increase correctly was premised on the prior and similar convictions.[8] We perceive this increase as fully justified and find no error in same.[9]

Harrington's sentence is AFFIRMED.

---

4A1.2.

[8]*See United States v. Pennington*, 9 F.3d 1116, 1118 (5th Cir. 1993) ("[S]everal [of the defendant's] prior convictions were not included in his criminal history category calculation; these convictions alone justified a departure.").

[9]Harrington also contends that the district court erred by refusing to grant an offense level reduction for acceptance of responsibility. *See* Sentencing Guidelines § 3E1.1. The record is devoid of any evidence that the district court erred by refusing this request.