**UNITED STATES of America**

v.

**Ernest J. SZARWARK.**

**No. 3:97 CR 28 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 2, 1998.

---

**16.** Indeed, to bar such testimony would invite unanchored speculation on the part of a lay jury.

C. Kenneth Wilber, Jr., Berger James Gammage and Wilber, South Bend, IN, for Ernest J Szarwark, defendant.

Donald J. Schmid, U.S. Atty's Office, South Bend, IN, for U.S.

### SENTENCING MEMORANDUM

ALLEN SHARP, District Judge.

#### I. Procedural History

The defendant, Ernest J. Szarwark, was charged in a four-Count indictment returned by a grand jury in this district on July 10, 1997. Defendant entered a plea of not guilty to all counts of the indictment. Defendant proceeded to a jury trial which commenced on January 5, 1998. On January 8, 1998, the jury returned a verdict of guilty on all four counts. Counts one through four charge the defendant with Mail Fraud in violation of 18 U.S.C. § 1341.

Because the offense occurred after November 1, 1987, the Sentencing Reform Act of 1984 and the United States Sentencing Commission Guidelines (Guidelines), as

amended November 1, 1997, apply to this sentencing, pursuant to *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).

### II. The Presentence Report

The defendant, defense counsel, and the government have reviewed the presentence report, as has the court. The defendant objects to paragraphs 34, 37, 38, 47 and 84. The government objects to paragraphs 34, 36, and 87–90. All other paragraphs of the presentence report not specifically addressed are adopted by the court as findings of fact and statements of reason for imposition of sentence in this case.

### III. The Defendant's Offense Level

Pursuant to U.S.S.G. § 3D1.2, counts One through Four are grouped together and sentenced. Pursuant to U.S.S.G. § 2F1.1, the base level for a violation of 18 U.S.C. § 1341 is six (6).[1] Additionally, pursuant to U.S.S.G. § 2F1.1(b)(1)(J) if the loss is more than $350,000, the base offense level is increased by nine (9).[2] This places defendant's initial base level at fifteen (15).

#### A. More than Minimal Planning

The defendant's level is (further) enhanced by two (2) levels for more than minimal planning pursuant to U.S.S.G. § 2F1.1(b)(2)(A). This enhancement is appropriate as the defendant's offense involved more than 120 transactions over a more than seven (7) year period. Accordingly, defendant's base level is adjusted to seventeen (17).

#### B. Abuse of Position of Trust (§ 3B1.3)

■ The definition of "public or private trust" in § 3B1.1, comment. (n. 1), was amended in November 1993. In addition to the factors listed in the guideline itself, courts should look for "professional or managerial discretion" and "significant-

ly less supervision" than other employees. *See, e.g., United States v. Ragland,* 72 F.3d 500, 502–03 (6th Cir.1996); *United States v. West,* 56 F.3d 216, 220 (D.C.Cir. 1995). The Seventh Circuit uses a two-level analysis in applying this enhancement. *See United States v. Stewart,* 33 F.3d 764, 768–70 (7th Cir.1994). In determining the applicability of this enhancement, the Court must determine (1) whether the defendant occupied a position of trust; and (2) whether the defendant abused his position in a manner that significantly facilitated the commission or concealment of the offense. *United States v. Zaragoza,* 123 F.3d 472, 480 (7th Cir.1997); *United States v. Boyle,* 10 F.3d 485, 488–89 (7th Cir.1993); *United States v. Gould,* 983 F.2d 92, 94 (7th Cir.1993). Furthermore, the position of trust is viewed in relation to the victim of the offense. *United States v. Hathcoat,* 30 F.3d 913, 919 (7th Cir.1994). This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. *United States v. Garrison,* 133 F.3d 831 (11th Cir.1998). This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors. *Id.*

■ A lawyer occupies a position of public trust. This is a given. *United States v. Harrington,* 114 F.3d 517, 519 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 320, 139 L.Ed.2d 248; *United States v. Glymph,* 96 F.3d 722 (4th Cir. 1996); *United States v. Serhant,* 740 F.2d 548 (7th Cir.1984). The integrity of our judicial system inextricably is intertwined with the integrity of our lawyers. It would be rank folly to suggest otherwise. *See*

---

**1.** The Court notes that defendant asserts his base level should be figured using § 2B1.1. Defendant is incorrect. He was convicted of violating 18 U.S.C. § 1341, Mail Fraud, which is only sentenced under either § 2F1.1 or

§ 2C1.7. Defendant's base offense level was appropriately calculated using § 2F1.1.

**2.** The parties agree that the total loss to Barnes & Thornburg was $465,998.33.

*United States v. Post,* 25 F.3d 599, 600 (8th Cir.1994) ("We conclude that Post's status as a licensed Arkansas attorney placed him in a position of public trust."). Szarwark's circumstances are similar to those in the case of *United States v. White,* 1 F.3d 13 (D.C.Cir.1993), *cert. denied* 510 U.S. 1111, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994), *reh'g denied.* In *White,* the court found that by setting up a trust account, which he later used to pay himself for his own part in the scheme, White used his skill to further the crime in this case. *Id.* In the present case, the defendant was a partner in his law firm. As an attorney, he held a position of trust. By embezzling funds from the firm he abused that position of trust. The defendant's level is thus properly enhanced by two (2) levels for his abuse of a position of trust pursuant to U.S.S.G. § 3B1.3 to a level nineteen (19).

### C. Acceptance of Responsibility (§ 3E1.1)

■ District courts have broad discretion to grant or deny the reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, comment. (n. 5); *United States v. Lghodaro,* 967 F.2d 1028, 1031–32 (5th Cir. 1992), *reh'g denied.* Furthermore, whether or not a defendant has accepted responsibility for his crime is a factual question. *United States v. Osborne,* 931 F.2d 1139, 1155 (7th Cir.1991), *reh'g denied.* What the sentencing judge is to look for is a defendant's demonstration of "genuine remorse" or "conscience." *See Zaragoza,* 123 F.3d 472, 480, *cert. denied* — U.S. ——, 118 S.Ct. 317, 139 L.Ed.2d 245; *United States v. Beserra,* 967 F.2d 254, 256 (7th Cir.1992), *cert. denied,* 506 U.S. 957, 113 S.Ct. 419, 121 L.Ed.2d 341. The district court's determination as to acceptance of responsibility is highly fact specific and involves the district judge's subjective appraisal of the totality of the defendant's conduct. *See, e.g., United States v. Dvorak,* 41 F.3d 1215, 1217 (7th Cir.1994); *United States v. Rosalez–Cortez,* 19 F.3d 1210, 1218 (7th Cir.1994).

■ While it may be a close question in granting this defendant a reduction for acceptance of responsibility, it is this Court's view that the evidence tips ever so slightly in Szarwark's favor. Therefore, pursuant to U.S.S.G. § 3E1.1(a), the defendant is given a two (2) level reduction for acceptance of responsibility. An additional one (1) level reduction under § 3E1.1(b)(2) is not warranted in this case as this reduction is for "timely notifying authorities of an intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial." While the court acknowledges that this defendant admitted his guilt for the fraud he committed against Barnes & Thornburg, this defendant also proceeded to trial on the issue of mail fraud. Thus defendant's adjusted base level is seventeen (17).

### D. Mental Defect or Condition (Diminished Capacity) (§ 5K2.13)

■ A significantly reduced mental capacity may be considered to warrant a downward departure, however, the Seventh Circuit requires a finding that the defendant's reduced mental capacity contributed to the commission of the crime; the link cannot be assumed. *United States v. Frazier,* 979 F.2d 1227, 1230 (7th Cir.1992) (remanded: no finding that defendant's "depressed mood" resulted in a significantly reduced mental capacity or contributed to the offense). The guidelines also instruct that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range..." U.S.S.G. § 5H1.3. Accordingly, courts have held that in order to qualify for a departure under § 5K2.13 a defendant must be suffering from something greater than "emotional problems," *United States v. Gentry,* 925 F.2d 186, 188 (7th Cir.1991), *reh'g denied,* or "hardship," *United States v. Johnson,* 979 F.2d 396, 401 (6th Cir. 1992), *reh'g denied. See also United States v. Withers,* 100 F.3d 1142 (4th Cir. 1996), *cert. denied,* 520 U.S. 1132, 117 S.Ct. 1282, 137 L.Ed.2d 358 (1997). A defendant must also demonstrate that his or her

"significantly reduced mental capacity" bears a causal relationship to the crime. *United States v. Goossens,* 84 F.3d 697, 702 (4th Cir.1996); *United States v. Sammoury,* 74 F.3d 1341, 1345–46 (D.C.Cir. 1996); *Gentry,* 925 F.2d at 188. This causal connection must consist of more than an emotional weakness that leaves one open to suggestion. Rather, in order to qualify for a diminished capacity departure, a defendant must show an inability "to process information or to reason." *Withers,* 100 F.3d at 1148; *United States v. Barajas–Nunez,* 91 F.3d 826, 831 (6th Cir.1996).

In *United States v. Pullen,* 89 F.3d 368 (7th Cir.1996), *cert. denied,* 519 U.S. 1066, 117 S.Ct. 706, 136 L.Ed.2d 627 (1997), the Seventh Circuit rejected a diminished capacity departure despite the fact that a psychologist testified that the defendant suffered from a "schizoid disorder" that impaired "his ability to think and act clearly". *Id.* at 369–70. The Seventh Circuit noted that "[i]f a miserable family history were in an average case a permissible basis for leniency ... this would resurrect the pre-guidelines regime of discretionary sentencing." *id.* at 371. *See also United States v. Cantu,* 12 F.3d 1506 (9th Cir. 1993) (reduced mental capacity refers to a lack of full intellectual functions .. both organic dysfunction and behavior disturbances that impair the formations of reasoned judgments); *United States v. Hamilton,* 949 F.2d 190 (6th Cir.1991) (noting that a defendant who was able to absorb information in the usual way and to exercise the power of reason was not suffering from "diminished capacity"); *compare, United States v. Philibert,* 947 F.2d 1467 (11th Cir.1991) (holding evidence that defendant suffered from severe mental illness, including paranoid delusions was sufficient to permit departure).

■ The present record provides no evidence to support a conclusion that Szarwark's ability to process information or to reason was substantially impaired. In fact, the evidence indicates that Szarwark displayed considerable mental agility in his profession as well as in his organization and commission of the fraud of which he was found guilty. While feelings of inferiority and depression may have contributed to this defendant's criminal behavior this fact is insufficient to warrant a departure based on "diminished capacity." While this Court may sympathize to some extent with Mr. Szarwark's current situation, based on the law and Guidelines, it cannot grant such a reduction.

### E. Aberrant Behavior

■ Downward departure may also be proper when a defendant's conduct is a "single act of aberrant behavior." U.S.S.G. Ch. 1, Pt. A. 4(d); *See United States v. Andruska,* 964 F.2d 640, 644–46 (7th Cir.1992), *see also United States v. Withrow,* 85 F.3d 527, 531 (11th Cir.1996). The Seventh Circuit holds that before a defendant's behavior may be considered "aberrant" it must be something more than merely something "out of character" or the defendant's first offense. *Andruska,* 964 F.2d at 645; *accord, United States v. Carey,* 895 F.2d 318 (7th Cir.1990). A "single act of aberrant behavior" has been defined by several circuits as an act that is "spontaneous and seemingly thoughtless" and as such cannot include extensive planning or a series of actions related to the criminal conduct. *See e.g., Andruska,* 964 F.2d at 645–46. While some circuits accept a less restrictive view of aberrant behavior, holding that the "totality of the circumstances" should be considered, the Seventh Circuit has refused to adopt such a view. *Id.*

■ Conduct that involves substantial planning is clearly not a single, "spontaneous and thoughtless act." *See United States v. Bush,* 126 F.3d 1298, 1301 (11th Cir.1997), *cert denied,* —— U.S. ——, 118 S.Ct. 1109, 140 L.Ed.2d 162 (1998) (held that where on several different occasions, over a period of time, defendant embezzled money from the credit union where she was employed was not aberrant behavior); *United States v. Marcello,* 13 F.3d 752 (3d

Cir.1994) (it was not aberrant behavior when an attorney, on seven separate occasions, structured bank deposits to avoid tax reporting requirements); *United States v. Garlich*, 951 F.2d 161 (8th Cir. 1991) (bank fraud scheme over one year period lacked spontaneity and thoughtlessness). In the present case, there is sufficient evidence to support that the defendant's fraudulent scheme involved a series of acts requiring substantial planning. Again, even though the Court recognizes the underlying pressures that may have contributed to Mr. Szarwark's uncharacteristic behavior, under the Seventh Circuit's view, such behavior is not a "spontaneous and thoughtless act" and therefore no reduction in offense level for aberrant behavior is warranted.

### F. Exceptional Case (Heartland)

■ District courts can depart downward from the applicable Guidelines range when they find a " 'mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the [G]uidelines.' " U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Each Guideline carves out a heartland—set of typical cases embodying the conduct that the Guideline describes.[3] *See Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392, (1996).

A November 1, 1994 addition to § 5K2.0's commentary makes a limited allowance for a totality of the circumstances departure: "The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually

distinguishes the case. However, the Commission believes that such cases will be extremely rare." *Koon v. U.S.*, 518 U.S. 81, 116 S.Ct. 2035, 2051, 135 L.Ed.2d 392 (1996); *see also, United States v. Sharma*, 85 F.3d 363, 364 (8th Cir.1996) (quoting *United States v. McFarlane*, 64 F.3d 1235, 1239 (8th Cir.1995)). Prior to *Koon* and the 1994 amendment to § 5K2.0, the Seventh Circuit specifically rejected a totality of circumstances approach when the individual factors were not proper grounds for departure. *See United States v. Carey*, 895 F.2d 318, 322–25 (7th Cir. 1990).

With the exception of certain specified factors that can never be bases for departure, the Sentencing Commission has not limited the kinds of factors that may make a case atypical and provide potential grounds for departure. *See Koon*, 116 S.Ct. at 2044–45; *United States v. Winters*, 105 F.3d 200( ). Nevertheless, the Commission lends courts some guidance by identifying certain factors as either encouraged or discouraged grounds. *See Koon*, 116 S.Ct. at 2045; *Winters* at. However, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon*, 116 S.Ct. at 2046. Accordingly, a district court considering a departure from the sentencing Guidelines is required to make the following inquiry:

(1) What features of this case potentially take the case outside of the Guidelines' "heartland" and make it a special or unusual case?

(2) Has the Commission forbidden departures based on those features?

(3) If not, has the Commission encouraged departures on those features?

---

3. As the Guidelines Manual explains:
 The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. U .S.S.G. Ch. 1, Pt. A, intro. comment. 4(b).

(4) If not, has the Commission discouraged departures based on those features?

*Koon,* 116 S.Ct. at 2045. Discouraged factors ... are those not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range. Examples include the defendant's family ties and responsibilities, his or her education and vocational skills, and his or her military, civic, charitable, or public service record. The Commission does not view discouraged factors as necessarily inappropriate for departure but says they should be relied upon only in exceptional cases. *Koon,* 116 S.Ct. at 2045 (citations and quotations omitted).

To determine whether defendant's conduct is of the sort which generally falls within the "heartland," this Court must determine the nature of the underlying crime of mail fraud. *See, e.g., LeBlanc,* 24 F.3d at 346; *United States v. Grandmaison,* 77 F.3d 555 (1st Cir.1996). Thus, the Court looks in part to the language of the mail fraud statute and to the legislative history which accompanies it. *Grandmaison, supra.* In relevant part, § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, [uses the mail system or causes it to be used] shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Congress enacted this statute in 1872, as "a general proscription against using the mails to initiate correspondence in furtherance of 'any scheme or artifice to defraud.'" *McNally v. United States,* 483 U.S. 350, 356, 359, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The legislative history suggests that Congress intended the mail fraud statute to protect people from "schemes to deprive them of their money or property." *Id.* at 356, 107 S.Ct. 2875. Mr. Szarwark's scheme was clearly for the purpose of obtaining money by means of fraudulent representations. Whether or not he used the mails to further this scheme was decided by a jury during his trial. The fact that defendant's counsel cannot locate any reported cases involving mail fraud and an employee stealing from his own place of employment (Def.'s Resp. to Presentencing Mem., p. 12–13), does not take this case out of the "heartland." Accordingly, a departure under this principle of the Guidelines is not appropriate.

### G. Extraordinary Circumstances

 To some extent, this argument is a restatement of defendant's "heartland" argument. A district court may depart from the Guidelines' sentencing range only when it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *Andruska,* 964 F.2d at 644. Courts have found that the degree of community support, continued community involvement and family ties are not factors which can be considered for downward departure. *United States v. Brewer,* 899 F.2d 503 (6th Cir.1990), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95. In addition, solid educational and employment background and the fact the defendant "is inherently honest, thoughtful and compassionate" are not grounds for departure. *United States v. Wind,* 128 F.3d 1276 (8th Cir.1997).

 Furthermore, while defendant is correct in the assertion that extraordinary characteristics such as unusual family obligations or exceptional charitable activities may, in certain circumstances, provide a basis for downward departure, *United States v. Canoy,* 38 F.3d 893, 905–07 (7th Cir.1994); *United States v. Haversat,* 22 F.3d 790 (8th Cir.1994), *cert. denied,* 516 U.S. 1027, 116 S.Ct. 671, 133 L.Ed.2d 521

(1995); *United States v. Sclamo,* 997 F.2d 970 (1st Cir.1993), such circumstances do not exist at present. While the Court sympathizes with defendant and his family, the fact that the defendant has children is not a mitigating factor. The Commission considered whether family responsibilities should affect the sentence, and concluded they "are not ordinarily relevant in determining" whether to depart. U.S.S.G. § 5H1.6; *United States v. Winters,* 105 F.3d 200 (5th Cir.1997); *United States v. Miller,* 991 F.2d 552 (9th Cir.1993); *United States v. Brewer,* 899 F.2d 503 (6th Cir.1990); *United States v. Johnson,* 964 F.2d 124 (2d Cir.1992). Szarwark has shown nothing more than that which innumerable defendants could establish; namely, that the imposition of a prison sentence normally disrupts parental relationships.

█ The fact that Szarwark has a clean record and poses no threat to the public is also not a proper ground for departure. The Commission considered these facts when it provided for six levels of criminal history categories. Szarwark receives the benefit of a criminal history category of zero (0) in this case.

The Court cannot find sufficient legal or factual support to deem this case "exceptional" so as to warrant a downward departure. Accordingly, the Court finds defendant's total offense level is seventeen (17). The defendant has zero criminal history points, so his criminal history category is 1.

### V. The Defendant's Sentence

With a total offense level of seventeen (17) and a criminal history of zero (0), the applicable Guideline range for imprisonment is 24 – 30 months. The defendant is sentenced to a term of 24 months, to be followed by two (2) years of supervised release as required by U.S.S.G. § 5D1.1(a). The conditions of supervised release shall include the thirteen standard conditions as listed under U.S.S.G. § 5B1.4, as well as conditions 1, 3, 4, 5, and 6 listed in the presentence investigation report.

### A. Ex Post Facto and Mandatory Restitution

█ Defendant argues that to require restitution for amounts taken prior to the April 24, 1996 amendment of 18 U.S.C. § 3663(a) would violate the prohibition against *ex post facto* laws. "To fall within the *ex post facto* prohibition, a law must be retrospective—that is 'it must apply to events occurring before its enactment'— and it 'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis,* 519 U.S. 433, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997) (quoting *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). The changes wrought by the Mandatory Victim Restitution Act (MVRA) do work to Szarwark's disadvantage. Before the MVRA became effective, the Victim and Witness Protection Act (VWPA) authorized but did not compel district courts to order restitution, *see* 18 U.S.C. § 3663(a)(1) (1994), and required courts to consider the defendant's financial resources in deciding whether to order restitution, *see id.* § 3664(a). By contrast, the MVRA makes restitution mandatory for certain crimes, *see* 18 U.S.C. § 3663A(a)(1) (West Supp.1997), including an offense committed by fraud, *see id.* § 3663A(c)(1)(A)(ii), and the Act mandates that restitution shall be ordered "without consideration of the economic circumstances of the defendant," *id.* § 3664(f)(1)(A).

This Court finds the cases of *United States v. Gilberg,* 75 F.3d 15, 21 (1st Cir. 1996); *United States v. Williams,* 128 F.3d 1239 (8th Cir.1997); and *United States v. Sclafani,* 996 F.Supp. 400 (D.N.J.1998) persuasive. In this case it would be retrospective to apply the MVRA, which was passed in 1996, to Szarwark's conduct which occurred in 1995 and earlier. Courts have agreed that application of the MVRA's restitution provisions to offenses committed prior to its effective date would violate the *Ex Post Facto* clause. *See*

*United States v. Thompson,* 113 F.3d 13, 14 n. 1 (2d Cir.1997); *Williams supra; United States v. Baggett,* 125 F.3d 1319 (9th Cir.1997); *United States v. Bapack,* 129 F.3d 1320 (D.C.Cir.1997). Therefore, the Court will apply the VWPA as it existed prior to the passage of the MVRA in determining the amount of restitution in this case.

### B. Defendant's Restitution and Fines

██ An order of restitution must take into account the defendant's ability to pay. 18 U.S.C. § 3664(a). Acknowledging that restitution is the norm, and a judge who declines to order full restitution must make explicit findings. *United States v. Ahmad,* 2 F.3d 245, 246–47 (7th Cir.1993) this Court now sets forth such.

██ The amount taken from the trust accounts at Barnes and Thornburg after April 24, 1996 amounted to $63,793.44. In the present case, $87,346.29 from a capital account was previously attached. This amount is considered the Court's ordered restitution. Therefore, the Court now considers the remaining $377,462.51 that was taken prior to 1996.

██ Before imposing an order of restitution, a district court must consider the amount of the victim's loss, the defendant's financial resources and the financial needs and earning ability of the defendant and his dependents. *United States v. Jaroszenko,* 92 F.3d 486, 491 (7th Cir.1996). Similar to *Jaroszenko,* the record in this case indicates that Szarwark does not now have the resources to repay $377,462.51. His mortgage is in foreclosure, he has lost his job, he will serve a term of confinement during which he will not earn a viable income. In addition, nothing in the record indicates that Szarwark possesses substantial resources or savings. Furthermore, he has a wife and two daughters who depend on him for their support. Moreover, it is unlikely that during the two year period of Szarwark's supervised release he will acquire substantial resources. His future employment prospects will be hampered by his conviction. Nor is it likely

that his family will earn sufficient funds to enable this defendant to pay such a large sum. Accordingly, although Szarwark may voluntarily, or under force of a civil judgment, eventually make full restitution, this court finds that an order demanding further restitution at this point is impossible. Therefore, and his future employment prospects will be hampered by his conviction, no additional restitution is ordered. Based on the defendant's financial information, the court imposes no fine. The court must and does assess a special assessment fee of $250.00.

### VI. Conclusion

This sentence is to commence at 12:00 noon on June 15, 1998, when the defendant is ordered to report to the office of the United States Marshal in South Bend, Indiana or to the designated institution. The court finds that this sentence sufficiently punishes this defendant for his criminal conduct and therefore satisfies the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

The clerk shall prepare judgment. The clerk shall also provide a copy of this Sentencing Memorandum to the United States Probation Department for forwarding to the United States Sentencing Commission. The defendant is hereby notified that he has a right to appeal this sentence and must file a notice of appeal within ten days of this order.

**IT IS SO ORDERED.**